```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
UNITED STATES OF AMERICA                :
                                        :
     -against-                          :    No. 16 Cr. 576 (JFK)
                                        :
CHRISTOPHER KERRIGAN,                   :    OPINION & ORDER
                                        :
                         Defendant.     :
---------------------------------------X
```

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 05/14/2020
```

APPEARANCES

FOR DEFENDANT CHRISTOPHER KERRIGAN:
    Bernard V. Kleinman
    LAW OFFICE OF BERNARD V. KLEINMAN PLLC

FOR THE UNITED STATES OF AMERICA:
    Benet J. Kearney
    U.S. ATTORNEY'S OFFICE FOR THE SOUTHERN DISTRICT OF NEW YORK

**JOHN F. KEENAN, United States District Judge:**

    Before the Court is an emergency motion by Christopher Kerrigan for a sentence reduction to time served and his immediate release from the Federal Correctional Institution, Fort Dix in New Jersey ("FCI Dix"), or, in the alternative, for immediate transfer to home confinement, due to Kerrigan's underlying health issues and the threat posed by the Coronavirus, COVID-19 ("COVID-19"). Kerrigan brings the motion pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A) ("the Act"), commonly known as the compassionate release statute. The Government opposes Kerrigan's motion as procedurally barred because he did not satisfy the Act's administrative exhaustion requirements before seeking judicial intervention, and

1

substantively meritless because Kerrigan's medical conditions, the circumstances of his incarceration, and the 18 U.S.C. § 3553(a) sentencing factors do not warrant a modification to his term of imprisonment.

For the reasons set forth below, Kerrigan's motion is DENIED.

I.  **Background**

On January 26, 2017, Kerrigan was arrested and charged with conspiracy to commit bank burglary and bank theft, in violation of 18 U.S.C. § 371; bank burglary, in violation of 18 U.S.C. § 2113(a); and bank theft, in violation of 18 U.S.C. § 2113(b). (Amended Presentence Investigation Report at 1–2, ECF No. 221.) The charges were returned in a five-count superseding indictment against Kerrigan and three co-defendants, and stemmed from Kerrigan's participation in a conspiracy to burglarize two banks over the course of two months using oxygen and acetylene torches to cut through the banks' roofs and into their vaults, in order to steal more than $20 million dollars' worth of valuables and priceless keepsakes from hundreds of victims.  (Id. ¶¶ 19–65.) The case was initially assigned to Judge Laura Taylor Swain, but on September 11, 2017, it was reassigned to Judge Katherine B. Forrest.

On November 9, 2017, Kerrigan pleaded guilty before Judge Forrest.  Kerrigan admitted to conspiring and participating in

the burglary of a HSBC Bank in Brooklyn, New York, and a Maspeth Federal Savings Bank in Queens County, New York.  (Id. ¶ 68.) Kerrigan stated that he did not physically enter either bank or participate in the process of cutting into the banks' roofs, but he admitted to acting as a "lookout and/or getaway driver" and that he "utilized a walkie-talkie" given to him by others in the conspiracy.  (Id.)

Kerrigan's sentencing occurred on March 30, 2018, during which Judge Forrest found a Guidelines incarceration range of 87 months to 108 months.  (Sent. Tr. at 24:12-14, 25:17-20, ECF No. 225.)  Judge Forrest allowed Kerrigan and his counsel the opportunity to identify any inaccuracies in Kerrigan's Presentence Investigation Report ("the PSR"), after which the Court adopted the PSR's uncontested factual statements.  (Id. 26:6-27:5.)  Turning to the Court's sentencing determination, Judge Forrest thoroughly considered the federal sentencing factors set forth in 18 U.S.C. § 3553(a).  (Id. 33:8-34:23.) Judge Forrest found that Kerrigan's involvement in the bank burglaries was intentional and deliberate, and that he played an important role in the conspiracy.  (Id. 34:24-35:24.)  Further, Judge Forrest found that the victims of Kerrigan's crime "were terribly harmed in a way that was far more than financial," and that Kerrigan was "part of a group of individuals who stole people's memories."  (Id. 36:12-17.)  Judge Forrest determined

3

that, irrespective of the Guidelines range and the offense level ultimately calculated, Kerrigan's serious criminal conduct warranted a term of imprisonment of 90 months, to be followed by three years of supervised release.  (Id. 37:17-38:25.)  Kerrigan began serving his sentence that same day.  To date, Kerrigan has served approximately 25 months of his 90-month sentence.  Kerrigan's scheduled release date is August 19, 2024.

On September 14, 2018, the case was reassigned to this Court.

On April 27, 2020, Kerrigan (through his counsel) filed an emergency motion for compassionate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i), on the grounds that Kerrigan's age (43), history of substance abuse, and the conditions of his incarceration at FCI Dix constitute "extraordinary and compelling reasons" to reduce his sentence and order his immediate release into home confinement.  (Emergency Mot. for Reduction of Sentence at 13-14, 30-34 (Apr. 27, 2020), ECF No. 308.)  In the alternative, Kerrigan requested that the Court "strongly recommend" to the BOP that he be designated "to serve the remaining portion of his sentence [in] home confinement, pursuant to 18 U.S.C. § 3621."  (Id. at 3.)  Kerrigan's motion stated that he filed a request for compassionate release with the Warden of FCI Dix on April 6, 2020, but he had yet to receive a response.  (Id. at 4.)

4

On May 5, 2020, the Government filed its opposition. (Letter from Benet J. Kearney, Assistant United States Attorney, to Hon. John F. Keenan (May 5, 2020), ECF No. 310.) The Government argued that Kerrigan's request was procedurally improper because he did not satisfy the statutory preconditions for relief pursuant to the First Step Act, and it should be denied on the merits because Kerrigan did not articulate any basis on which the Court should reduce his sentence. (Id.)

On May 7, 2020, Kerrigan filed a reply in which he raised, for the first time, a series of medical conditions that, he argued, increased his risk of exposure to COVID-19. (Letter from Bernard V. Kleinman to Hon. John F. Keenan (May 7, 2020), ECF No. 314 (attaching declaration from Kerrigan stating that he suffers from chest pains, shortness of breath, occasional bursting of blood vessels in his eyes, obesity, high blood pressure and high cholesterol, and unspecified liver, abdominal, bladder, and urinary tract issues, as well as a family history of heart disease and high blood pressure).) The Government requested the opportunity to respond to Kerrigan's new claims, and on May 10, 2020, it filed a sur-reply arguing that none of Kerrigan's newly disclosed medical issues warrant his early release. (Letter from Benet J. Kearney, Assistant United States Attorney, to Hon. John F. Keenan (May 10, 2020), ECF No. 315.)

On May 13, 2020, the Government filed two victim statements that it received after providing notice of Kerrigan's pending motion pursuant to the Crime Victims' Rights Act, codified in 18 U.S.C. § 3771.  (Letter from Benet J. Kearney, Assistant United States Attorney, to Hon. John F. Keenan (May 13, 2020), ECF No. 316.)  Kerrigan filed a response on May 14, 2020.  (Letter from Bernard V. Kleinman to Hon. John F. Keenan (May 14, 2020), ECF No. 317.)

## II. Discussion

### A. Legal Standard

18 U.S.C. § 3582(c)(1)(A) allows a court to modify a term of imprisonment "upon motion of the [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).  Where this exhaustion requirement is satisfied, a court may reduce the defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Id. § 3582(c)(1)(A)(i).  In doing so, the Court must also consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." Id. §

6

3582(c)(1)(A).  "Application of the § 3553(a) factors requires an assessment of whether the relevant factors 'outweigh the "extraordinary and compelling reasons" warranting compassionate release . . . [and] whether compassionate release would undermine the goals of the original sentence.'" United States v. Daugerdas, --- F. Supp. 3d ---, No. 09 Cr. 581 (WHP), 2020 WL 2097653, at *4 (S.D.N.Y. May 1, 2020) (alterations in original) (quoting United States v. Ebbers, --- F. Supp. ---, No. 02 Cr. 11443 (VEC), 2020 WL 91399, at *7 (S.D.N.Y. Jan. 8, 2020)).

The relevant policy statement issued by the U.S. Sentencing Commission ("the Commission") pertaining to compassionate release is found at § 1B1.13 of the Sentencing Guidelines. Application Note 1 to § 1B1.13 describes four potential extraordinary and compelling reasons that may warrant compassionate release: (1) the defendant has a terminal medical condition or a serious health condition that substantially diminishes his ability to provide self-care; (2) the defendant is at least 65 years old and has served 75% of his sentence; (3) family circumstances; and (4) an extraordinary and compelling reason other than or in combination with one of the above. U.S. Sentencing Guidelines Manual (U.S.S.G.) § 1B1.13(1)(A) & cmt. n.1(A)-(D) (U.S. Sentencing Comm'n 2018).  The defendant, however, must not be "a danger to the safety of any other person or to the community," id. § 1B1.13(2), and "[r]ehabilitation of

7

the defendant alone shall not be considered an extraordinary and compelling reason," 28 U.S.C. § 994(t); see also U.S.S.G. § 1B1.13 cmt. n.3.

### B. Analysis

The Court is sympathetic to the heightened risk certain individuals face from COVID-19.  See People Who Are at Higher Risk for Severe Illness, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited May 14, 2020); see also United States v. Park, No. 16 Cr. 473 (RA), 2020 WL 1970603, at *2 (S.D.N.Y. Apr. 24, 2020) ("The nature of prisons—crowded, with shared sleeping spaces and common areas, and often with limited access to medical assistance and hygienic products—put those incarcerated inside a facility with an outbreak at heightened risk.") (collecting sources).

Nevertheless, after considering the 3553(a) factors, including the nature and circumstances of Kerrigan's offense and his history and characteristics, 18 U.S.C. § 3553(a)(1), as well as the need for the sentence imposed and the kinds of sentences available, id. § 3553(a)(2)–(3), the Court finds that reducing Kerrigan's term of incarceration would not be "consistent with applicable policy statements issued by the Sentencing Commission," id. § 3582(c)(1)(A)(i), nor would it be supported by the "factors set forth in section 3553(a)," id. §

3582(c)(1)(A).  Accordingly, Kerrigan's motion is denied on the merits, and the Court need not decide whether the motion is procedurally proper.

First, Kerrigan has failed to articulate an extraordinary and compelling reason why his sentence should be reduced.  The foundation of Kerrigan's motion is the threat he faces from COVID-19 while incarcerated.  According to the Centers for Disease Control and Prevention ("the CDC"), adults aged 65 years or older and people of any age who have serious underlying medical conditions may be at higher risk for a severe illness from COVID-19. See People Who Are at Higher Risk for Severe Illness, Ctrs. for Disease Control & Prevention, supra.  Here, however, Kerrigan's age and the medical issues he belatedly identifies are not severe enough to warrant compassionate release.  Kerrigan is significantly younger than 65 years old, and while obesity and liver disease may indicate "high-risk" according to the CDC, none of the other medical issues that Kerrigan asserts indicate that he suffers from other primary risk factors looked to by courts, such as asthma, diabetes, or immunocompromization. See, e.g., Park, 2020 WL 1970603, at *1 (granting release to 44-year old defendant with a documented history of respiratory issues, including severe asthma, and immune-compromising diseases); United States v. Smith, No. 12 Cr. 133 (JFK), 2020 WL 1849748, at *1 (S.D.N.Y. Apr. 13, 2020)

9


(granting release to 62-year old defendant who suffered from asthma, high cholesterol, blood clots, a thyroid condition, and suspected multiple myeloma); United States v. Zukerman, --- F. Supp. 3d ---, No. 16 Cr. 194 (AT), 2020 WL 1659880, at *4 (S.D.N.Y. Apr. 3, 2020) (granting release to 75-year old defendant who suffered from diabetes, hypertension, and obesity); but see, e.g., United States v. Lagan, 18 Cr. 283 (LEK), Dkt. No. 91, at 6–7 (N.D.N.Y. May 11, 2020) (denying release to nonviolent 62-year old defendant with obesity, a family history of heart disease and lung cancer, and a history of heavy smoking and drinking); United States v. Haney, --- F. Supp. 3d ---, No. 19 Cr. 541 (JSR), 2020 WL 1821988, at *5 (S.D.N.Y. Apr. 13, 2020) (denying release to nonviolent 61-year old defendant with a history of substance abuse who did not suffer from asthma, diabetes, heart disease, or other deleterious health conditions that made him unusually vulnerable to the effects of COVID-19).

Second, and decisive here, even if Kerrigan's health issues constituted "extraordinary and compelling reasons" to reduce his sentence, application of the § 3553(a) sentencing factors outweighs any such reduction. The factors that weigh in Kerrigan's favor, such as the need to provide him with necessary medical care, are overshadowed by the combined force of "the nature and circumstances of the offense" and the need for the

sentence imposed to "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment for the offense," "afford adequate deterrence to criminal conduct," and "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a).  For the reasons stated in detail at Kerrigan's sentencing, which the Court incorporates by reference here, including the finding that Kerrigan played an important and deliberate role in a series of serious crimes that resulted in property damage to two banks and the theft of tens of millions of dollars' worth of valuables and priceless keepsakes from hundreds of victims, the Court finds that converting Kerrigan's 7.5-year term of incarceration into one of home confinement, when he has served little more than two years of his original sentence, would disserve the above important sentencing factors. See, e.g., Lagan, 18 Cr. 283 (LEK), Dkt. No. 91, at 10 (denying compassionate release); Haney, 2020 WL 1821988, at *7 (same).

### III. Conclusion

For the reasons set forth above, Kerrigan's motion for reduction in sentence or a recommendation to the Bureau of Prisons that he be placed in home confinement is DENIED.

The Clerk of Court is directed to terminate the motion docketed at ECF No. 308.

11

**SO ORDERED.**

Dated:   New York, New York
         May 14, 2020

_____
John F. Keenan
United States District Judge